IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DIVERSIFIED SOLUTIONS, INC., | § | CASE NO. 14-10069-TMD |
| | § | |
| DEBTOR. | § | CHAPTER 11 |

**DIVERSIFIED SOLUTIONS, INC.'S OBJECTION AND RESPONSE TO THE MOTION OF GARNET ANALYTICS, INC. FOR RELIEF FROM THE AUTOMATIC STAY TO CONTINUE CONNECTICUT FEDERAL DISTRICT COURT ACTION**

[Relating to Docket No. 27]

Diversified Solutions, Inc. (the "Debtor") files its *Objection and Response* to the *Motion of Garnet Analytics, Inc. for Relief from the Automatic Stay to Continue Connecticut Federal District Court Action* ("*Motion to Lift Stay*") [Docket No. 27]. In support of its *Objection and Response*, the Debtor states the following:

## I. PRELIMINARY STATEMENT

1. Garnet Analytics, Inc. ("Garnet") requests that this Court lift the automatic so that it may resume the stayed Connecticut federal court litigation against the Debtor and perfect its alleged lien on the Debtor's garnished funds. This Court should deny Garnet's *Motion to Lift Stay* because, upon consideration of the relevant factors, cause does not exist to lift the automatic stay. Alternatively, the Debtor did not file its bankruptcy in bad faith. Permitting Garnet to resume the Connecticut federal court litigation will cause the Debtor to expend its resources defending the Connecticut federal court litigation rather than formulating and seeking to confirm a Chapter 11 plan of reorganization.

## II. ARGUMENT

2. "Once a party files in bankruptcy, under Chapter 11, for example, 11 U.S.C. § 362, et seq., stays further actions against the debtor. Virtually any act attempting to enforce a

judgment against or obtain property from the estate of the debtor is stayed once the title 11 proceedings are commenced." *Arnold v. Garlock*, 278 F.3d 426, 435-36 (5th Cir. 2001).

3. Section 362 of the Bankruptcy Code does permit relief from the automatic stay under certain conditions. The relevant portion of Section 362 of the Bankruptcy Code states:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization . . . .

11 U.S.C. § 362(d)(1)-(2).

4. A bankruptcy court has the discretion to lift the automatic stay, and its decision may be overturned only upon a showing of abuse of that discretion. *See generally Gibraltar Sav. v. LD Brinkman Corp.*, 860 F.2d 1275, 1285 (5th Cir. 1988).

5. Here, Garnet asserts that the automatic stay should be lifted either pursuant to Section 361(d)(1) or, alternatively, Section 361(d)(2).[1] With respect to relief under Section 361(d)(1), bankruptcy courts typically "balance the hardship to the creditor, if he is not allowed to proceed with his lawsuit, against potential prejudice to the debtor, debtors' estate and other creditors." *In re R.J. Groover Constr., LLC*, 411 B.R. 460, 463-64 (Bankr. N.D. Ga. 2008). In applying this balancing test, bankruptcy courts generally consider twelve factors:

> (1) Whether relief would result in a partial or complete resolution of the issues;
>
> (2) The lack of any connection with or interference with the bankruptcy case;

---

[1] Garnet's requests for relief under Section 361(d)(1). In its introduction to the *Motion to Lift Stay*, however, Garnet alternatively requests for relief under Section 361(d)(2).

2

 (3) Whether the other proceeding involves the debtor as a fiduciary;

 (4) Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

 (5) Whether the debtor's insurer has assumed full responsibility for defending it;

 (6) Whether the action primarily involves third parties;

 (7) Whether litigation in another forum would prejudice the interests of other creditors;

 (8) Whether the judgment claim arising from the other action is subject to equitable subordination;

 (9) Whether movant's success in the other proceeding would result in a judicial lien available by the debtor;

 (10) The interests of judicial economy and the expeditious and economical resolution of the litigation;

 (11) Whether the parties are ready for trial in the other proceeding; and

 (12) The impact of the stay on the parties and the balance of harms.

*See generally Sonnax Industries Inc. v. Tri Component Prod. Corp. (In re Sonnax Industries, Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990); *In re New York Medical Group, P.C.*, 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001); and *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Ut. 1984). These factors are not weighted equally, and a bankruptcy court considers only those factors that are relevant to the case. *See In re Mazzeo*, 167 F.3d 139, 143 (2d Cir. 1999).

 6. With respect to relief under Section 361(d)(2), a movant must show that there is no reasonable likelihood of reorganization and that the property at issue is not necessary for a reorganization. *See U.S. Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd)*, 484 U.S. 365, 375-76 (1988).

**A.     Cause Does Not Exist To Lift the Automatic Stay**

7.      Contrary to Garnet's assertion, the balancing of the hardships does not favor lifting the automatic stay.  Application of the relevant factors shows that cause does not exist to lift the automatic stay.

8.      The following factors show that the automatic stay should not be lifted:

a.      <u>Whether relief would result in a partial or complete resolution of the issues</u>: Permitting Garnet to resume the Connecticut federal court litigation will not resolve all the issues between the Debtor and Garnet.  The only issue that will be resolved is whether the Debtor is liable to Garnet on account of Garnet's claims asserted against the Debtor.  One issue that cannot be resolved in the Connecticut federal court litigation is whether Garnet, as a potential judgment creditor, is secured by the Debtor's funds that were garnished pursuant to Connecticut's pre-judgment attachment remedies.  *See generally* CONN. GEN. STAT. § 52-278a, *et. seq.* Another issue that cannot be resolved in the Connecticut federal court litigation is whether the garnishment of such funds is a fraudulent transfer.  *Compare Besing v. Hatwthorn (In re Besing)*, 981 F.2d 1488, 1493 (5th Cir. 1993) (stating that because "the Code's definition of 'transfer' expressly includes involuntary dispositions, dispositions of property which are brought about by state judicial proceedings fall within its scope [11 U.S.C. § 548].") *and Vescovo v. First State Bank (In re Vescovo)*, 125 B.R. 468, 473 (Bankr. W.D. Tex. 1990) (holding that payment of cash deposit with the county clerk for purposes of appeal was not a fraudulent transfer because the underlying judgment was valid).

b.      <u>The lack of any connection with or interference with the bankruptcy case</u>: Permitting Garnet to resume the Connecticut federal court litigation will directly interfere with the Debtor's bankruptcy case in two ways.  First, Garnet seeks more than just establishing

4

liability against the Debtor. In addition to establishing liability, Garnet seeks to perfect its alleged lien on the Debtor's garnished funds, thereby appropriating funds in the Debtor's bankruptcy estate that can be used to pay for the Debtor's post-petition business operations and to fund a Chapter 11 plan of reorganization. *Compare with In re Todd Shipyards Corp.*, 92 B.R. 600, 604 (Bankr. D. N.J. 1988) ("Since the movants only seek to litigate their claims to the point of judgment and do not seek relief from the stay in order to attach the property of the debtor, such relief does not interfere with the bankruptcy proceedings.").

Second, the Debtor will be required to expend its resources in defending itself against Garnet's claims rather than expending its resources to propose and seek confirmation of a Chapter 11 plan of reorganization. The Debtor will also be required to expend further resources to defend and indemnify Brian Sol and Michael Lundy regarding Garnet's claims against them.

c. <u>Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action</u>: With respect to the Debtor, Garnet asserts claims of: (i) breach of contract; (ii) breach of covenant of good faith and fair dealing; (iii) promissory estoppel; (iv) quantum meruit/unjust enrichment; (v) negligent misrepresentation; (vi) fraud; and (vii) unfair trade practices. Specialized knowledge or technical expertise is not necessary to adjudicate these claims. This Court is capable of adjudicating of all of Garnet's claims against the Debtor.

d. <u>Whether the action primarily involves third parties</u>: The Debtor is the main defendant in the Connecticut federal court litigation. Garnet's claims against Brian Sol and Michael Lundy arise from their acts as officers and employees of the Debtor.

e. <u>Whether litigation in another forum would prejudice the interests of other creditors</u>: Other creditors will be prejudiced by the lifting of the automatic stay because Garnet seeks to perfect its alleged lien on the Debtor's garnished funds, thus elevating itself at the

5

expense of other creditors and reducing funds available for distribution to general unsecured creditors. *Compare with R.J. Groover*, 411 B.R. at 465 (stating, "other creditors in the debtors' bankruptcy will not be harmed by granting the motion because any possible recovery will be limited to the available insurance proceeds, and Mrs. Karp will not be able to enforce any judgment against the debtors or the estate without further order of this Court.").

   f. <u>The interests of judicial economy and the expeditious and economical resolution of the litigation</u>: Rather than litigating all of the issues between the Debtor and Garnet on a piecemeal basis, it would be a more efficient use of judicial resources and the Debtor's resources for this Court to determine the Debtor's liability to Garnet, if any, and the extent, priority, and/or validity of Garnet's interest in the Debtor's garnished funds.

**B. The Debtor Did Not File Its Bankruptcy Case in Bad Faith**

  9. Garnet asserts that the Debtor filed its bankruptcy case in bad faith because: (i) the case involves a two party dispute; (ii) the Debtor is using the bankruptcy to improperly transfer venue of the Connecticut federal court litigation; (iii) the Debtor is using the bankruptcy to "evade" the Connecticut federal court's order regarding increasing the assets available for pre-judgment garnishment; and (iv) the Debtor has no real ongoing business and lacks a reasonable possibility of reorganization. *See generally Little Creek Development Co., v. Commonwealth Mortgage Corp. (In re Little Creek Development Co.)*, 779 F.2d 1068, 1072-73 (5th Cir. 1986) (listing factors to be considered). However, such "slavish recitation of facts reminiscent of the illustrative factors listed in *Little Creek* will not suffice to establish bad faith sufficient to warrant relief from stay." *In re Sentry Park, Ltd.*, 87 B.R. 427, 430 (Bankr. W.D. Tex. 1988). Instead, a party asserting bad faith must show "there has been an abuse of the bankruptcy process." *Id.*

  10. Garnet fails to show that the Debtor is abusing the bankruptcy process. There

6

have been no allegations that the Debtor is concealing any assets, or has engaged in any improper conduct. To date, the Debtor has timely filed its *Schedules* [Docket No. 25] and *Statement of Financial Affairs* [Docket No. 26], and it has complied with all the other requirements under the Bankruptcy Code and Bankruptcy Rules.

C.  **The Garnished Funds Are Necessary for an Effective Reorganization**

11. Currently, approximately $776,879.43 of the Debtor's funds has been garnished by Garnet. The Debtor needs these funds to pay for its operations during its bankruptcy case, and to fund a Chapter 11 plan of reorganization.

D.  **Garnet's Pre-Judgment Garnishment of the Debtors Funds is Subject to Avoidance**

12. In requesting relief from the automatic stay, Garnet presupposes that its pre-judgment garnishment of the Debtor's funds cannot be avoided under Chapter 5 of the Bankruptcy Code. *See generally Montana Cigarette, Candy & Tobacco v. Shivani (In re Shivani)*, 2004 WL 484549 at *3 (Bankr. D. Ct. Mar. 11, 2004) ("It has long been the law that a Connecticut attachment that was duly recorded prepetition and was not avoided in the debtor's bankruptcy survives the debtor's bankruptcy discharge.").

13. The cases cited by Garnet in support of presupposition relate to pre-judgment, pre-petition attachment liens that were created outside of the applicable avoidance period. *See generally First Fed. Bank of California v. Robbins (In re Robbins)*, 310 B.R. 626, 629 (9th Cir. B.A.P. 2004) ("A prejudgment attachment issued outside the preference period is enforceable in bankruptcy and is not avoidable as a preference."); *In re Aquarius Disk Services, Inc.*, 254 B.R. 253, 256 (Bankr. N.D. Cal. 2000) ("While inchoate, an attachment lien differs from a mere unperfected interest in that it is not subject to a trustee's avoidance powers under §§ 544 and 547 if created outside the preference period."); *Fed. Deposit Ins. Corp. v. Debtor &*

7

*Trustee (In re Moscoso Villaronga)*, 111 B.R. 13, 17 (Bankr. D. P.R. 1989) ("Furthermore, a valid, recorded, prejudgment lien is not subject to avoidance under the Code <u>unless it was recorded within the ninety day period</u> immediately preceeding [sic] the filing of the petition."); and *In re McNeely*, 51 B.R. 816, 819-20 (Bankr. D. Ut. 1985) ("Where a writ of attachment is issued and the debtor's property is <u>levied upon prior to the 90-day preference period</u>, a lien is created in favor of the creditor which cannot be avoided by the trustee."). Here, there has been no determination whether the garnishment of the Debtor's funds can be avoided as a fraudulent transfer. *See Besing*, 981 F.2d at 1493.

### III. ADMISSIONS OR DENIALS REQUIRED BY LOCAL RULE 9014(B)(1)[2]

1. The Debtor admits the allegations in Paragraph 1 of the *Motion to Lift Stay*.

2. The Debtor admits the allegations in Paragraph 2 of the *Motion to Lift Stay*.

3. The allegations in Paragraph 3 of the *Motion to Lift Stay* provide a chronology of the litigation between the Debtor and Garnet, to which no admission or denial is necessary. With respect to reference to the various pleadings and rulings, such documents speak for themselves.

4. The Debtor denies the allegations in Paragraph 4 of the *Motion to Lift Stay*. Beginning in late 2008, it was Kaskie, Plude and Company LLC ("KPC"), not Garnet, that provided analytic services and prepared tax studies and forms for the Debtor. In late 2009, the Debtor agreed to compensate Garnet for the services provided by KPC to the Debtor.

5. The Debtor admits and denies the allegations in Paragraph 5 of the *Motion to Lift Stay*. One member of the Debtor's staff, Mark Astleford, used the term "whales." Michael Lundy never used the term "whales." In May and June of 2009, fees had not been collected by the Debtor from its clients. Accordingly, the Debtor was unable to engage in a cost-benefit

---

[2] The Debtor notes that its motion to amend/correct its answer to Garnet's *Complaint* was pending in the Connecticut federal court litigation when it filed for bankruptcy.

8

analysis of whether the telephone excise tax return applications were worthwhile. The Debtor does note that at that time, and based on the amount of resources expended for one particular client, the rate of return was low in comparison to the generated fees.

6. The Debtor denies the allegations in Paragraph 6 of the *Motion to Lift Stay*.

7. The Debtor denies the allegations in Paragraph 7 of the *Motion to Lift Stay*. The Debtor's agreement for analytic services, tax studies, and forms was with KPC, not Garnet. Although Michael Lundy did receive a draft letter from Denise Plude regarding Garnet, Michael Lundy never reviewed such draft letter. The Debtor never signed any engagement letter with Garnet, and the Debtor never agreed to engage Garnet for any services. Consistent with paying Garnet for services provided by KPC, the Debtor paid invoices submitted by Garnet.

8. The Debtor admits the allegations in Paragraph 8 of the *Motion to Lift Stay*. Michael Lundy instructed Denise Prude to cease working on the Debtor's projects, and he demanded materials, work product, and invoices only after the Debtor discovered certain improprieties on the part of Garnet and/or KPC. In response, Denise Prude offered to sell Garnet's purported "work product." The Debtor declined this offer.

9. The Debtor admits the first sentence in Paragraph 9 of the *Motion to Lift Stay*. The Debtor denies the second sentence in Paragraph 9. With respect to the references to the May 4, 2012 letter from the Debtor to Garnet, such letter speaks for itself. This letter also expressed the Debtor's concern regarding Denise Plude's hourly rate, which was increased to $500 per hour, and then retroactively applied to services already performed. To the extent that the allegations in Paragraph 9 are legal conclusions, the Debtor is not required to admit or deny such allegations.

10. The Debtor admits the allegations in Paragraph 10 of the *Motion to Lift Stay*.

11. The Debtor admits the allegations in Paragraph 11 of the *Motion to Lift Stay*. With respect to reference to the Connecticut federal court's rulings, such documents speak for themselves.

12. The Debtor admits the allegations in Paragraph 12 of the *Motion to Lift Stay*. With respect to reference to the Connecticut federal court's ruling, the document speaks for itself. Kondler's relationship with the Debtor pre-dated the termination of KPC, but only because the Debtor needed to find a replacement provider that had sufficient staff and resources to handle the Debtor's projects. There were no "discounts" involved regarding compensation to KPC. KPC and Garnet were made aware by the Debtor's staff that, due to the differing considerations for each project and the competitive sales environment, each project had varying compensation. The Debtor's rate structures have been disclosed to both KPC and Garnet. The Debtor did not try to avoid paying compensation due to KPC. The Debtor merely contested submitted invoices. To the extent that the allegations in Paragraph 12 are legal conclusions, the Debtor is not required to admit or deny such allegations.

13. The Debtor admits the allegations in Paragraph 13 of the *Motion to Lift Stay*.

14. The Debtor denies the allegations in Paragraph 14 of the *Motion to Lift Stay*. The Debtor filed a motion to amend/correct its answer in the Connecticut federal court litigation. This motion was pending when the Debtor filed its bankruptcy case, and thus the Connecticut federal court has not had a chance to rule on this motion. Thus, the Debtors deny that the Connecticut federal court's prior rulings constitute law of the case or establish limits on the Debtor's proof. Notably, in a November 7, 2013 ruling, the court stated:

> Defendants filed a Motion to Amend/Correct Second Amended Answer of 12/12/12 on October 8, 2013. If the motion is granted and defendants are permitted to file their Proposed Amendment to Second Amended Answer, then the parties can complete discovery and present these claims, defenses and

10

   counterclaims on a Motion for Summary Judgment on a full evidentiary record. But the Court cannot find probable cause to sustain these affirmative defenses on the existing PJR record.

To the extent that the allegations in Paragraph 14 are legal conclusions, the Debtor is not required to admit or deny such allegations.

  15.  The Debtor admits the allegations in Paragraph 15 of the *Motion to Lift Stay*.

  16.  The Debtor admits the allegations in Paragraph 16 of the *Motion to Lift Stay*. With respect to reference to the Connecticut federal court's ruling, the document speaks for itself.

  17.  The Debtor admits the allegations in Paragraph 17 of the *Motion to Lift Stay*. With respect to reference to the Connecticut federal court's ruling, the document speaks for itself. To the extent that the allegations in Paragraph 17 are legal conclusions, the Debtor is not required to admit or deny such allegations.

  18.  The Debtor admits the allegations in Paragraph 18 of the *Motion to Lift Stay*. With respect to reference to the Connecticut federal court's ruling, the document speaks for itself. To the extent that the allegations in Paragraph 18 are legal conclusions, the Debtor is not required to admit or deny such allegations.

  19.  The Debtor admits the allegations in Paragraph 19 of the *Motion to Lift Stay*. With respect to reference to the Connecticut federal court's ruling, the document speaks for itself. To the extent that the allegations in Paragraph 19 are legal conclusions, the Debtor is not required to admit or deny such allegations.

  20.  The Debtor admits in part and denies in part the allegations in Paragraph 20 of the *Motion to Lift Stay*. The Debtor admits that a Rule 26 report was filed in the Connecticut federal court litigation. The Debtor admits that the Rule 26 report set certain deadlines. The Debtor denies that these deadlines are currently applicable, given that the Debtor's motion to

amend/correct its answer was pending when the Debtor filed its bankruptcy case. Notably, in a November 7, 2013 ruling, the court stated:

> Defendants filed a Motion to Amend/Correct Second Amended Answer of 12/12/12 on October 8, 2013. If the motion is granted and defendants are permitted to file their Proposed Amendment to Second Amended Answer, then the parties can complete discovery and present these claims, defenses and counterclaims on a Motion for Summary Judgment on a full evidentiary record. But the Court cannot find probable cause to sustain these affirmative defenses on the existing PJR record.

To the extent that the allegations in Paragraph 20 are legal conclusions, the Debtor is not required to admit or deny such allegations.

21. The Debtor admits the first two sentences in Paragraph 21 of the *Motion to Lift Stay*, and the Debtor denies the remaining allegations. The Debtor denies that discovery is closed and the deadline for dispositive motions has passed, given that the Debtor's motion to amend/correct its answer was pending when the Debtor filed its bankruptcy case. With respect to reference to the parties' Rule 26 report filed in the Connecticut federal court litigation, such document speaks for itself. To the extent that the allegations in Paragraph 21 are legal conclusions, the Debtor is not required to admit or deny such allegations.

22. The Debtor admits the allegations in Paragraph 22 of the *Motion to Lift Stay*. With respect to reference to the Connecticut federal court's ruling, the document speaks for itself.

23. The Debtor admits the allegations in Paragraph 23 of the *Motion to Lift Stay*. With respect to reference to the Connecticut federal court's ruling, the document speaks for itself. To the extent that the allegations in Paragraph 23 are legal conclusions, the Debtor is not required to admit or deny such allegations.

24. The Debtor admits the allegations in Paragraph 24 of the *Motion to Lift Stay*.

With respect to reference to the Connecticut federal court's ruling, the document speaks for itself.

25. The Debtor admits the allegations in Paragraph 25 of the *Motion to Lift Stay*. With respect to reference to the Connecticut federal court's ruling, the document speaks for itself.

26. The Debtor admits and denies the allegations in Paragraph 26 of the *Motion to Lift Stay*. With respect to reference to the Connecticut federal court's ruling, the document speaks for itself. The Debtor admits that the Connecticut federal court did make a ruling. The Debtor denies Garnet's characterization and legal effect of this ruling, as stated in the first sentence of Paragraph 26. Notably, in a November 7, 2013 ruling, the court stated:

> Defendants filed a Motion to Amend/Correct Second Amended Answer of 12/12/12 on October 8, 2013. If the motion is granted and defendants are permitted to file their Proposed Amendment to Second Amended Answer, then the parties can complete discovery and present these claims, defenses and counterclaims on a Motion for Summary Judgment on a full evidentiary record. But the Court cannot find probable cause to sustain these affirmative defenses on the existing PJR record.

To the extent that the allegations in Paragraph 26 are legal conclusions, the Debtor is not required to admit or deny such allegations.

27. The Debtor admits the allegations in Paragraph 27 of the *Motion to Lift Stay*. With respect to reference to the Connecticut federal court's ruling, the document speaks for itself.

28. The Debtor admits the allegations in Paragraph 28 of the *Motion to Lift Stay*. With respect to reference to the Connecticut federal court's rulings, the documents speak for itself.

29. The allegations in Paragraph 29 of the *Motion to Lift Stay* recites Garnet's belief

as to the pending issues in the Connecticut federal court litigation, to which no admission or denial is necessary.

30. The Debtor admits the allegations in Paragraph 30 of the *Motion to Lift Stay*. With respect to reference to the Connecticut federal court's ruling, the document speaks for itself.

31. The Debtor admits the allegations in Paragraph 31 of the *Motion to Lift Stay*. With respect to reference to the Connecticut federal court's ruling, the document speaks for itself.

32. The Debtor admits the allegations in Paragraph 32 of the *Motion to Lift Stay*.

33. Paragraph 33 of the *Motion to Lift Stay* refers to pleadings filed in the Connecticut federal court litigation, to which no admission or denial is necessary.

The remaining Paragraphs 34 through 48 in the *Motion to Lift Stay* are Garnet's legal arguments as to why this Court should lift the automatic stay, to which no admission or denial is necessary.

## IV. CONCLUSION AND PRAYER

Cause does not exist to lift the automatic stay. Additionally, the Debtor did not file its bankruptcy in bad faith. Accordingly, the Debtor requests that this Court: (i) deny Garnet's *Motion to Lift Stay* and (ii) grant such further relief to which the Debtor is justly entitled.

Date: February 12, 2014

HUSCH BLACKWELL LLP
111 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 472-5456
(512) 226-7318 (fax)
lynn.butler@huschblackwell.com
sam.chang@huschblackwell.com

By: */s/ Lynn Hamilton Butler*
Lynn Hamilton Butler
State Bar No. 03527350
Sam Chang
State Bar No. 24078333

PROPOSED ATTORNEYS FOR
DIVERSIFIED SOLUTIONS, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 12, 2014, a true and correct copy of the foregoing pleading was served, via the Court's CM/ECF notification system to the parties registered to receive notice on such system, and via first class mail, the very next day, to the parties on the attached mailing matrix.

*/s/ Lynn Hamilton Butler*
Lynn Hamilton Butler

IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DIVERSIFIED SOLUTIONS, INC., | § | CASE NO. 14-10069-TMD |
| | § | |
| DEBTOR. | § | CHAPTER 11 |

ORDER DENYING THE
MOTION OF GARNET ANALYTICS, INC. FOR RELIEF FROM THE AUTOMATIC
STAY TO CONTINUE CONNECTICUT FEDERAL DISTRICT COURT ACTION
[Relating to Docket No. 27]

On this day, the Court considered the *Motion of Garnet Analytics, Inc. for Relief from the Automatic Stay to Continue Connecticut Federal District Court Action* ("*Motion to Lift Stay*") [Docket No. 27]. Having considered the *Motion to Lift Stay*, the *Objection and Response* filed by the Debtor, evidence presented by the parties, and the arguments of counsel, the Court is of the opinion that the *Motion to Lift Stay* should be denied. It is therefore:

ORDERED that the *Motion to Lift Stay* is DENIED.

# # #

1

Proposed order submitted by:

Lynn Hamilton Butler
State Bar No. 03527350
Sam Chang
State Bar No. 24078333
HUSCH BLACKWELL LLP
111 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 472-5456
(512) 226-7318 (fax)
lynn.butler@huschblackwell.com
sam.chang@huschblackwell.com

PROPOSED ATTORNEYS FOR DIVERSIFIED SOLUTIONS, INC.

| | | |
|---|---|---|
| Label Matrix for local noticing<br>0542-1<br>Case 14-10069-tmd<br>Western District of Texas<br>Austin<br>Wed Feb 12 17:37:56 CST 2014 | Diversified Solutions, Inc.<br>8101 Avella Drive<br>Austin, TX 78729-4939 | U.S. BANKRUPTCY COURT<br>903 SAN JACINTO, SUITE 322<br>AUSTIN, TX 78701-2450 |
| Adam S. Mocciolo<br>Pullman & Comley<br>850 Main Street<br>Bridgeport, CT 06604-4988 | Alison Marie Perry<br>Pullman & Comley<br>840 Main Street<br>Bridgeport, CT 06604 | Amber Giles<br>5102 Doss Road<br>Austin, TX 78734-1209 |
| American Express<br>Attn: Bankruptcy Division<br>P.O. Box 360002<br>Fort Lauderdale, FL 33336-0002 | Anthem Blue Cross<br>P.O. Box 9051<br>Oxnard, CA 93031-9051 | Audimation Services, Inc.<br>1250 Wood Branch Park Dr., Suite 480<br>Houston, TX 77079-1212 |
| Brian J. Sol<br>P.O. Box 2472<br>Stateline, NV 89449-2472 | CH Services, Inc.<br>11011 Domain Drive<br>Austin, TX 78758-7764 | Christopher P. McCormack<br>Pullman & Comley<br>840 Main Street<br>Bridgeport, CT 06604 |
| Cody Hobza<br>13008 Hymeadow Circle<br>Austin, TX 78729-1758 | Dan Hernandez<br>2635 W. 45th<br>Austin, TX 78731-5941 | (p)INTERNAL REVENUE SERVICE<br>CENTRALIZED INSOLVENCY OPERATIONS<br>PO BOX 7346<br>PHILADELPHIA PA 19101-7346 |
| Diamond Aviation Services<br>3205 Paseo Vista<br>San Martin, CA 95046-9700 | Earthnet, Inc.<br>4735 Walnut St., Suite F<br>Boulder, CO 80301-2553 | Elizabeth Viveros<br>1175 Prussian Way<br>Oceanside, CA 92057-1840 |
| Employment Development Department<br>State of California<br>Bankruptcy Unit - MIC 92E<br>P.O. Box 826880<br>Sacramento, CA 94280-0001 | FedEx<br>Attn: Bankruptcy Div.<br>P.O. Box 7221<br>Pasadena, CA 91109-7321 | Franchise Tax Board<br>Bankruptcy Section, MS A-340<br>P.O. Box 2952<br>Sacramento, CA 95812-2952 |
| Garnet Analytics, Inc.<br>324 Elm Street, Suite 103B<br>Monroe, CT 06468-2283 | Garnet Analytics, Inc.<br>c/o Hugh M. Ray, III<br>McKool Smith PC<br>600 Travis Suite 7000<br>Houston, TX 77002-3018 | Halloran & Sage LLP<br>Attn: Joseph J. Arcata, III, Esq.<br>One Goodwin Square<br>225 Asylum St.<br>Hartford, CT 06103-1516 |
| Internal Revenue Service<br>P.O. Box 7346<br>Philadelphia, PA 19101-7346 | Kondler & Associates<br>6460 Medical Center St., Suite 230<br>Las Vegas, NV 89148-2421 | Larry Conklin<br>1175 Prussian Way<br>Oceanside, CA 92057-1840 |
| Lubich & Lubich<br>16375 Monterey Road, Suite N<br>Morgan Hill, CA 95037-5442 | Lynn H. Butler<br>Husch Blackwell LLP<br>111 Congress Avenue, Suite 1400<br>Austin, TX 78701-4093 | Manaya Management, Inc.<br>P.O. Box 2472<br>Stateline, NV 89449-2472 |

| | | |
|---|---|---|
| Mark Astleford<br>15450 FM 1325 - Apt. # 1536<br>Austin, TX 78728-2838 | Michael Lundy<br>8101 Avella Drive<br>Austin, TX 78729-4939 | Moco Tax<br>3080 Bristol Street, Suite 110<br>Costa Mesa, CA 92626-3055 |
| PM3 Consulting, Inc.<br>3220 Feathergrass Ct., 9106<br>Austin, TX 78758-7778 | Patricia Menz<br>2207 Pasadena Dr., #9<br>Austin, TX 78757-2214 | Premiere Global Services<br>P.O. Box 404351<br>Atlanta, GA 30384-4351 |
| Secretary of State<br>State of California<br>1500 11th Street<br>Sacramento, CA 95814-5701 | Secrtary of the Treasury<br>1500 Pennsylvania Avenue, N.W.<br>Washington, DC 20220-0001 | Sourcive, Inc.<br>4255 Garlan Lane<br>Reno, NV 89509-5444 |
| (p)CALIFORNIA STATE BOARD OF EQUALIZATION<br>ACCOUNT REFERENCE GROUP MIC 29<br>P O BOX 942879<br>SACRAMENTO CA 94279-0029 | Texas Attorney General<br>Bankruptcy & Collections Division<br>P.O. Box 12548<br>Austin, TX 78711-2548 | (p)TEXAS COMPTROLLER OF PUBLIC ACCOUNTS<br>REVENUE ACCOUNTING DIV - BANKRUPTCY SECTION<br>PO BOX 13528<br>AUSTIN TX 78711-3528 |
| Texas Workforce Commission<br>Tax-Collections<br>101 E. 15th Street<br>Austin, TX 78778-0001 | Tristan Scott Cowperthwait<br>Pullman & Comley<br>840 Main Street<br>Bridgeport, CT 06604 | U.S. Attorney General<br>Department of Justice<br>950 Pennsylvania Avenue NW<br>Washington, DC 20530-0009 |
| (p)US BANK<br>PO BOX 5229<br>CINCINNATI OH 45201-5229 | U.S. Department of the Treasury<br>Attn: Bankruptcy Dept.<br>Ogden, UT 84201-0001 | Unified Services<br>2635 W. 45th<br>Austin, TX 78731-5941 |
| United States Trustee - AU12<br>United States Trustee<br>903 San Jacinto Blvd, Suite 230<br>Austin, TX 78701-2450 | Verizon<br>Attn: Bankruptcy Div<br>P.O. Box 920041<br>Dallas, TX 75392-0041 | Verizon Wireless<br>Attn: Bankruptcy Div.<br>P.o. Box 660108<br>Dallas, TX 75266-0108 |
| Wells Fargo Business Card<br>P.O. Box 54349<br>Los Angeles, CA 90054-0349 | Williamson County Tax Assessor<br>904 South Main<br>Georgetown, TX 78626-5829 | |

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

| | | |
|---|---|---|
| Department of Treasury<br>Attn: Bankruptcy Div.<br>P.O. Box 105083<br>Atlanta, GA 30348 | (d)Internal Revenue Service<br>Attn: Bankruptcy Division<br>P.O. Box 105078<br>Atlanta, GA 30348 | (d)Internal Revenue Service<br>Attn: Bankruptcy Division<br>P.O. Box 105083<br>Atlanta, GA 30348 |

| | | |
|---|---|---|
| State Board of Equalization<br>State of California<br>Account & Analysis & Control Section<br>P.O. Box 942879<br>Sacramento, CA 94279 | Texas Comptroller<br>c/o Susan Combs<br>P.O. Box 13528<br>Austin, TX 78711-3528 | U.S. Bank<br>P.O. Box 790408<br>Saint Louis, MO 63179 |

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (d)Brian J. Sol.<br>P.O. Box 2472<br>Stateline, NV 89449-2472 | (d)Internal Revenue Service<br>PO BOX 7346<br>Philadelphia, PA 19101-7346 | (d)Lynn H. Butler<br>Husch Blackwell LLP<br>111 Congress Avenue, Suite 1400<br>Austin, TX 78701-4093 |

End of Label Matrix
Mailable recipients    52
Bypassed recipients     3
Total                  55