IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DIVERSIFIED SOLUTIONS, INC. | § | CASE NO. 14-10069 |
|     Debtor | § | Chapter 11 |
| | § | |

**EXPEDITED JOINT MOTION TO APPROVE (I) COMPROMISE WITH GARNET ANALYTICS UNDER RULE 9019 AND (II) AND DISMISSAL OF CASE UPON PAYMENT OF NON-INSIDER CREDITORS**

*******************************************************************

**If no timely response is filed within 21 days\*\* from the date of service, the relief requested herein may be granted without a hearing being held.**

**A timely filed response is necessary for a hearing to be held.**

**\*\*Expedited consideration of this motion has been sought which may require less-than 21 days notice.\*\***

*******************************************************************

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Diversified Solutions, Inc., Debtor-in-Possession, and Garnet Analytics, Inc. ("Garnet") move this court to approve compromise and dismissal or abstention of the case and would respectfully show the Court as follows:

## Summary

The Court's Order to Show Cause raised the possibility of the appointment of a Chapter 11 Trustee, conversion or dismissal. On April 7, 2014, the Debtor and Garnet met to explore a compromise of their disputes that would be approvable by this Court. Because the Court's comments on the record on March 31, 2014, reflected concern with the interests of the Debtor and creditors, these parties assumed the Court would examine any compromise for fair treatment of nonparticipating creditors. To that end, they worked toward a compromise that would address the Court's concerns by assuring that non-insider creditors' claims would be

1

fully satisfied by payment or agreement upon dismissal.  The compromise being presented to the Court thus provides for dismissal or abstention of the case, but on terms that satisfy the claims of Garnet and all non-insider creditors.  The compromise easily meets the test of Rule 9019.  Under the standards of 11 U.S.C. §1112 and §305, the Court may dismiss or abstain from the case when it is in the interests of creditors to do so, and upon such conditions as justice requires.

## Jurisdiction and Venue

1. This Court has jurisdiction by virtue of 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1), (b)(2)(A), (B), and (O).  The Court has authority to enter final orders granting the relief sought in this motion because the relief sought is sought pursuant to sections 305, 105 and 1112 of the Bankruptcy Code – adjudicating public rights arising under the code.

2. Venue is proper in this District pursuant to 28. U.S.C. § 1408(1) because the Debtor's principal place of business has been located in this District for more than 180 days preceding the filing of this bankruptcy case.

## Expedited Consideration

3. Expedited consideration is warranted under the balancing of the equities. Creditors face the hardship of delayed payment and the Debtor faces additional tax and administration costs if the compromise is delayed.  There is no harm to the creditors from this compromise and their rights are not being affected.  Indeed, this is a better result than the alternatives of conversion or dismissal listed in the Show Cause Order, which would provide no assurance of payment to anyone, much less full payment.

**Factual Background**

4. Garnet and the Debtor have been in litigation arising out of a business relationship that ended in 2012. In that litigation, Garnet obtained prejudgment relief against the Debtor pursuant to Connecticut law permitting Garnet to attach $2.188 million. The order authorizing this relief omitted several categories of damages that Garnet would claim in a final judgment; Garnet would contend that recoverable damages and interest would exceed $5 Million. A judgment including punitive damages under the Connecticut Unfair Trade Practices Act could double or treble certain components of an award, resulting in a judgment potential in the range of $9 million.

5. As the Court noted on the record in a hearing in this matter on March 31, 2014, the Debtor has scheduled other non-insider claims totaling approximately $370,000. The rights of those creditors are not impaired by the dismissal of the case or the approval of the Garnet settlement on the terms proposed. To the contrary, their rights are improved by the creation of a creditor fund, which will fully satisfy their claims in the amounts owed, and which is without prejudice for them to seek additional money after dismissal. Additionally, the Debtor will have the opportunity to reach agreement with each of the scheduled creditors as to the method by which the creditors' claims may be fully paid.

6. In the wake of the Court's *Order to Show Cause*, representatives of Garnet and the Debtor met in New York on April 7, 2014, with their respective counsel.[1] A topic of universal concern was that Garnet's compromise must pass the scrutiny of this Court. Also, the parties understood that, if the compromise framework did not provide for treatment of other non-insider unsecured creditors in a manner that addressed the concerns the Court expressed

---

[1] Mr. Butler appeared by phone, but Mr. Arcata represents the Debtor, Sol and Lundy in the Connecticut suit brought by Garnet and was present.

3

on the record at the March 31 hearing, the Court might convert the case to a proceeding under Chapter 7 . The Court will likely review principles of ratable distribution and the absolute priority rule in evaluating the compromise.

7. The efforts of Garnet and the Debtor over a long day of hard fought, arms-length negotiations resulted in a global agreement providing for compromise of the Garnet claim, but also protection of other non-insider creditors. The compromise reduces Garnet's claim from over $9 Million to a total below the $2.188 million already approved by the District Court in Connecticut as a prejudgment attachment. The compromise also includes mutual releases and ends the Connecticut litigation..

## The Proposed Compromise and Settlement

8. To resolve the dispute the parties (in individual and corporate capacities) signed a term sheet (attached as **Exhibit A**) and support a proposed order of dismissal. The Term provides for the following:

- Settlement is conditioned upon a Bankruptcy Court final order approving the compromise and the Court's Dismissal of (or abstention of) DSI Bankruptcy Case.

- $2,100,000.00 shall be paid to Garnet Analytics from Sol, Lundy and/or DSI upon entry of the bankruptcy court order dismissing (or abstaining from) the DSI Bankruptcy Case.

- An escrow is to be created consisting of $370,000, or such other amount determined by the Court to be sufficient, to pay the non-insider, unsecured claims held against the Debtor (described in the proposed form of order).

- The form of dismissal order is to be substantially in the form agreed.

- After payment to Garnet, the Connecticut court case will be dismissed with prejudice and mutual releases will be given for and by all Parties and their affiliates.

9. The Court is also asked to authorize the Debtor to execute and deliver, perform under, consummate and implement any and all necessary settlement documents, together with

4

all additional instruments and documents that may be reasonably requested or necessary or desirable to effectuate the compromise and/or implement the releases therein.

**Relief Requested**

10.     By this Motion, pursuant to Bankruptcy Code § 105 and Bankruptcy Rule 9019, the Debtor and Garnet request that the Court permit the Debtor to enter into the compromise set forth above on the estate's behalf.

11.     The Debtor and Garnet seek dismissal or abstention under 11 U.S.C. §1112 and/or 11 U.S.C. §305.

**Basis for Relief**

A.     **Basis to Approve Compromise.**

12.     Bankruptcy Rule 9019(a) empowers a bankruptcy court to approve compromises and settlements if they are "fair and equitable and in the best interest of the estate." *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 355 (5th Cir. 1997).

13.     Indeed, "[t]o minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" *Anderson*, 390 U.S. at 424 (1968) (citation omitted). Bankruptcy Code § 105(a) further provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provision of [the Bankruptcy Code]." The approval of a settlement pursuant to Bankruptcy Rule 9019 is committed to the bankruptcy court's discretion." *Key3Media Group, Inc. v. Pulver.com, Inc. (In re Key3Media Group, Inc.)*, 336 B.R. 87, 92 (Bankr. D. Del. 2005). In analyzing a proposed settlement, courts seek to determine "whether or not the terms of the proposed compromise fall within the reasonable range of litigation possibilities." *In re Energy Corp., Inc.*, 886 F.2d 921, 929 (7th Cir. 1989).

5

14. Thus, this Court need only conclude that the proposed settlement "falls within the reasonable range of litigation possibilities" somewhere "above the lowest point in the range of reasonableness." *In re Coram Healthcare Corp.*, 315 B.R. 321, 330 (Bankr. D. Del. 2004) (approving settlement where success "not assured," difficulties in proposing plan absent settlement, and expense, inconvenience, and delay to all creditors.) (internal citations omitted); *see also, e.g.*, *Official Unsecured Creditors' Comm. v. Pennsylvania Truck Lines, Inc. (In re Pennsylvania Truck Lines, Inc.)*, 150 B.R. 595, 601-02 (E.D. Pa. 1992) (affirming bankruptcy court's approval of settlement despite debtor's "sketchy" analysis of cost, time and risk), *aff'd*, 8 F.3d 812 (3d Cir. 1993).

15. In fact, that litigation may arguably result in a better outcome does not render a settlement unreasonable. *Id.* at 603. Indeed, a court need not conclude that a settlement is the best possible compromise. *Id.* at 329-30. In deciding whether to approve a settlement, a court should also consider whether the issues to be litigated are complex and the results uncertain. *See In re Kaiser Aluminum Corp.*, 339 B.R. 91, 96 (D. Del. 2006) (approving as reasonable a settlement of claims because "in the face of these complex and uncertain issues, it is difficult to envision who would succeed, but not difficult to envision complex, costly and time-consuming litigation"). Basic to evaluating proposed compromises or settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." *TMT*, 390 U.S. at 425. This Court is not required, however, to hold a full evidentiary hearing before a compromise can be approved; rather, the Court's obligation is "to canvass the issues and see whether the settlement 'falls below the lowest point in a range of reasonableness.'" *In re Drexel Lambert Group, Inc.*, 134 B.R. 493, 496-97 (Bankr. S.D.N.Y. 1991).

AUS-5961525-1 519891/3

16. Courts also typically adhere to the business judgment rule, giving "some deference" to a debtor's business judgment. *In re OptInRealBig.com, LLC*, 345 B.R. 277, 291-92 (Bankr. D. Colo. 2006) (citing *Depo v. Chase Lincoln First Bank, N.A.,* 77 B.R. 381, 384 (N.D.N.Y. 1987), *aff'd,* 863 F.2d 45 (2d Cir.1988)); *In re Buffalo Coal Co.*, No. 06-366, 2006 WL 3359585, at *3 (Bankr. N.D. W. Va. Nov. 15, 2006) ("A decision to compromise a claim is also reviewed under the business judgment test."); *see also GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 254 (N.D. Tex. 2005) (finding that a court is to give "great judicial deference . . . to the [debtor's] exercise of business judgment"); *In re Cadkey Corp.*, 317 B.R. 19, 22-23 (D. Mass. 2004) (finding that debtor's business decision should be approved unless it is manifestly unreasonable); *In re Bakalis*, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998) (debtor's business judgment enjoys "great judicial deference").

17. If Garnet were to proceed with the Connecticut litigation against the Debtor – which the Court has already authorized Garnet to do - the Debtor would continue to face a costly and complex defense, especially given the very difficult issues the Debtor would have to address at trial. As an initial matter, the estate simply does not have the funds to pursue lengthy litigation, and the proposed compromise with Garnet would not only resolve the estate's claims with little additional legal expense, it would also liquidate a claim with a far higher liability potential to the compromise amount of $2.1 million. The $2.1 million is less than the prejudgment remedy attachment amount of $2.188 million, which omitted certain punitive damage and interest components.

18. If the Debtor were required to litigate its claims against Garnet, in parallel with ongoing bankruptcy proceedings, the Debtor would also have to contend with the complex work of analyzing business and accounting records. There would potentially be additional fact

discovery specific to the bankruptcy proceeding, as well as possible collateral litigation over the attachment lien pursuant to the Connecticut prejudgment remedy statute notwithstanding the case authorities cited by Garnet that the attachment is not avoidable on any ground and gives rise to an enforceable and allowed secured claim. Even if the Debtor were to ultimately prevail in a challenge to the Connecticut attachment, the law on the subject is at best uncertain so the risk of appeal is significant. Given the costs involved, even if the Debtor prevailed in the end (which it in all probability does not have the funds to do), the victory would be Pyrrhic, at best.

19. Since Garnet holds the largest single claim against the Debtor by a significant margin, its settlement at a significantly reduced amount with provision for payment of other, non-insider creditors constitutes a compromise that is "fair and equitable and in the best interest of the estate." *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d at 355. To the extent the proposed compromise is viewed as a pre-plan settlement, it is in conformance with the standard of fair and equitable treatment to Garnet and other creditors, *see U.S. v. AWECO,* 725 F.2d 293, 298 (5th Cir. 1984), inasmuch as there is no creditor senior in priority to Garnet whose full payment would be at risk and all other non-insider creditors will be satisfied in full.

**B.      Basis to Approve Dismissal.**

20. Under 11 U.S.C. §305, the Court may abstain from hearing a case if the abstention is in the best interests of the creditors and the estate. Here, the compromise provides for payment of the creditors and abstention is therefore in the best interests of all.

21. Under 11 U.S.C. §1112 the Court may dismiss a case for "cause", which includes a non-exclusive list of factors, but also permits the court to determine cause in equity. Also, the Court may condition the dismissal when justice so requires.

22. Section 105(a) of the Bankruptcy Code provides in relevant part: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

23. The Debtor submits that sound business justification exists to dismiss or abstain upon approval of the compromise. First, the dismissal will end the administrative costs and encourages the Debtor to continue operating, which permits it to pay ongoing creditors. Second, dismissal permits creditors to act freely with the Debtor. Third, all creditors benefit from avoiding the future costs and expenses associated with continuation of the Connecticut litigation and the bankruptcy.

## Notice is being Provided

24. Notice of this Motion has been or will be provided to the U.S. Trustee, the creditors on the Debtor's mailing matrix, any persons who have filed a request for notice pursuant to Bankruptcy Rule 2002, and any such other government agencies to the extent required by the Bankruptcy Rules and Local Rules. The Debtor submits that no further notice of this Motion is required.

## Conclusion

25. In this case, the parties that are active in the case seek dismissal. Dismissal or abstention (upon approval of the compromise) is in the interests of the creditors.

## Prayer

WHEREFORE, the Debtor and Garnet request that the Court enter an Order:

(1) Approving the compromise, including the execution of documents needed to further effectuate it;

(2) Dismissing the case as set forth on the proposed order; and

(3) Granting such other and further relief as is proper.

AUS-5961525-1 519891/3

Dated: April 9, 2014.

    Respectfully submitted,

    **HUSCH BLACKWELL, LLP**

    */s/ Lynn H. Butler*
    Lynn Hamilton Butler, Esq.
    State Bar No. 03527350
    111 Congress Ave Ste 1400
    Austin, TX 78701
    *Attorneys for the Debtor*

    And

    **PULLMAN & COMLEY, LLC**

    /s/ Christopher P. McCormack
    By: Christopher P. McCormack
    Irve J. Goldman
    850 Main Street, P.O. Box 7006
    Bridgeport, CT 06601-7006
    Telephone: (203) 330-2000
    Facsimile: (203) 576-8888
    cmccormack@pullcom.com
    igoldman@pullcom.com

    *Attorneys for Garnet Analytics, Inc.*

    **and**

    **McKOOL SMITH P.C.**

    By: */s/ Hugh M. Ray*
    HUGH M. RAY, III
    State Bar No. 24004246
    600 Travis, Suite 7000
    Houston, Texas 77002
    Telephone: (713) 485-7300
    Facsimile: (713) 485-7344

    *Attorneys for Garnet Analytics, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on April 9, 2014 a true and correct copy of this document was served on all parties on the attached official service list by electronic means as listed on the Court's ECF noticing system, and by United States first class mail, postage prepaid at the address indicated.

/s/ Lynn H. Butler
Lynn Hamilton Butler

## Settlement Term Sheet

### Subject to Bankruptcy Court Approval, the parties agree to the following

**Parties**:
Denise T. Plude
Michael S. Plude
Garnet Analytics, Inc.
Kaskie, Plude & Co., LLC
Brian J. Sol
Michael J. Lundy
Diversified Solutions, Inc. ("DSI")

**Payment**:

$2,100,000.00 to Garnet Analytics from Sol, Lundy and/or DSI upon entry of the bankruptcy court order dismissing (or abstaining from) the DSI Bankruptcy Case.
An escrow of additional funds of $370,000, or other amount determined by the Court to be sufficient to pay non-insider, unsecured claims against the Debtor, (described in the proposed form of order).
The form of dismissal order must be substantially in the form attached hereto.

### Mutual General Releases
After payment to Garnet, dismissal of Connecticut court case with prejudice and mutual releases of all Parties and their affiliates.

### Condition Precedent
Bankruptcy Court final order approving compromise and Court's Dismissal of (or abstention of) DSI Bankruptcy Case.

Dated April 7, 2014

_____
Brian Sol, individually and for DSI

_____
Michael Lundy, individually and for DSI

_____
Denise T. Plude, Individually and for
Garnet Analytics, Inc.

_____
Michael S. Plude, Individually and for
Kaskie, Plude & Co., LLC

4/7/2014 5:19:57 PM

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

|  |  |  |
|---|---|---|
| In re: | x : | Chapter 11 |
| DIVISIFIED SOLUTIONS, INC., | : : | Case No. 14-10069 (TMD) |
| Debtor | : x |  |

## ORDER DISMISSING CASE WITH CONDITIONS

On this day, there came before the Court for consideration its Order to Show Cause why the Court should not order the appointment of a chapter 11 trustee or convert or dismiss this chapter 11 case (the "Order to Show Cause"), and based upon the evidence and arguments presented to the Court at the hearing on the Motion of Garnet Analytics, Inc. for Relief from the Automatic Stay to Continue the Connecticut District Court Action (the "Lift Stay Motion") and the Debtor's Motion to Enforce the Automatic Stay, together with the proposal presented to the Court at the hearing on the Order to Show Cause by creditor, Garnet Analytics, Inc. ("Garnet") and the Debtor, Diversified Solutions, Inc. ("Debtor or Diversified"), for the dismissal of this chapter 11 case with conditions, the Court hereby finds good cause to dismiss this chapter 11

case subject to the terms and conditions set forth in this order pursuant to §§1112(b) and 349(b). Accordingly, it is hereby

**ORDERED**, that the Debtor's chapter 11 case shall be, and it hereby is, dismissed under the following terms and conditions with which the Debtor, Lundy and Sol are directed to comply:

1. Upon entry of this order, the Debtor and its officers, directors and shareholders, Michael Lundy ("Lundy") and Brian Sol ("Sol") (collectively, the "Diversified Parties"), shall pay the sum of $2,100,000 (the "Settlement Amount") to Garnet in full and final satisfaction all claims Garnet has or may assert against the Diversified Parties, including those set forth in the action currently pending in the United States District Court for the District of Connecticut and as more fully identified in the Lift Stay Motion (the "Connecticut Action"). In furtherance of such payment, the Debtor shall take all necessary steps to cause the funds that are currently subject to Garnet's prejudgment garnishment and on deposit with US Bank to be unconditionally released to Garnet. Upon payment of the Settlement Amount, Garnet and the Diversified Parties shall exchange mutual general releases and Garnet shall dismiss the Connecticut Action with prejudice.

2. In the absence of timely payment of the Settlement Amount, Garnet shall be deemed to hold an allowed secured claim in the amount of $1.6 million and a total allowed claim in the amount of $5 million, not subject to objection, disallowance or subordination.

3. Within 14 days of the date of this order, the Diversified Parties shall deposit in an escrow account $370,000, or such funds determined by the Court to be sufficient to pay non-insider, unsecured claims against the Debtor (the "Non-Insider Creditors") and which may not be used for any other purpose (the "Creditor Fund") absent further order of the Court. The Debtor

shall promptly thereafter file evidence with the Court that the Creditor Fund has been established.

4. The Debtor shall pay the Non-Insider Creditors as soon as reasonably practicable following the entry of this order in the amounts set forth on the Debtor's current Schedules E and F or in such other manner as may be agreed to in writing by a particular creditor and the Debtor (the "Creditor Payments"), provided that any such agreement shall be filed with the Court with an affirmation under oath by Lundy and Sol that the particular creditor has agreed to the treatment set forth in the agreement that is filed.

5. The Creditor Payments shall be made not later than 30 days from the entry of this order or such additional time the Court may allow for cause shown within such 30-day period.

6. Upon completion of the Creditor Payments, the Debtor shall evidence thereof, with an affirmation under oath by Lundy and Sol that all Creditors Payments have been made. If the total amount of the Creditor Payments is less than the amount of the Creditor Fund, the surplus may be released to the Debtor.

7. Upon the filing of an affirmation under oath by Lundy and Sol that the Settlement Payment has been made, that the Non-Insiders Creditors have been paid or satisfied in full, and that all U.S. trustee fees that are owed have been paid, the Clerk is directed to close this chapter 11 case.

8. The dismissal of this case shall be effective as of the funding of the Creditor Fund and payment of the Settlement Payment, but the Court retains jurisdiction of this case to monitor and enforce compliance with this order and grant such relief as it may deem appropriate.

# # #

```
Label Matrix for local noticing          Diversified Solutions, Inc.              U.S. BANKRUPTCY COURT
0542-1                                    8101 Avella Drive                        903 SAN JACINTO, SUITE 322
Case 14-10069-tmd                         Austin, TX 78729-4939                    AUSTIN, TX 78701-2450
Western District of Texas
Austin
Wed Apr  9 12:58:06 CDT 2014

Adam S. Mocciolo                          Alison Marie Perry                       Amber Giles
Pullman & Comley                          Pullman & Comley                         5102 Doss Road
850 Main Street                           840 Main Street                          Austin, TX 78734-1209
Bridgeport, CT 06604-4988                 Bridgeport, CT 06604


American Express                          Anthem Blue Cross                        Audimation Services, Inc.
Attn: Bankruptcy Division                 P.O. Box 9051                            1250 Wood Branch Park Dr., Suite 480
P.O. Box 360002                           Oxnard, CA 93031-9051                    Houston, TX 77079-1212
Fort Lauderdale, FL 33336-0002


Brian J. Sol                              CH Services, Inc.                        Christopher P. McCormack
P.O. Box 2472                             11011 Domain Drive                       Pullman & Comley
Stateline, NV 89449-2472                  Austin, TX 78758-7764                    840 Main Street
                                                                                   Bridgeport, CT 06604


Cody Hobza                                Dan Hernandez                            (p)INTERNAL REVENUE SERVICE
13008 Hymeadow Circle                     2635 W. 45th                             CENTRALIZED INSOLVENCY OPERATIONS
Austin, TX 78729-1758                     Austin, TX 78731-5941                    PO BOX 7346
                                                                                   PHILADELPHIA PA 19101-7346


Diamond Aviation Services                 Earthnet, Inc.                           Elizabeth Viveros
3205 Paseo Vista                          4735 Walnut St., Suite F                 1175 Prussian Way
San Martin, CA 95046-9700                 Boulder, CO 80301-2553                   Oceanside, CA 92057-1840


Employment Development Department         FedEx                                    Franchise Tax Board
State of California                       Attn: Bankruptcy Div.                    Bankruptcy Section MS A340
Bankruptcy Unit - MIC 92E                 P.O. Box 7221                            PO Box 2952
P.O. Box 826880                           Pasadena, CA 91109-7321                  Sacramento, CA 95812-2952
Sacramento, CA 94280-0001


Franchise Tax Board                       Garnet Analytics, Inc.                   Garnet Analytics, Inc.
Bankruptcy Section, MS A-340              324 Elm Street, Suite 103B               c/o Hugh M. Ray, III
P.O. Box 2952                             Monroe, CT 06468-2283                    McKool Smith PC
Sacramento, CA 95812-2952                                                          600 Travis Suite 7000
                                                                                   Houston, TX 77002-3018


Halloran & Sage LLP                       Internal Revenue Service                 Kondler & Associates
Attn: Joseph J. Arcata, III, Esq.         P.O. Box 7346                            6460 Medical Center St., Suite 230
One Goodwin Square                        Philadelphia, PA 19101-7346              Las Vegas, NV 89148-2421
225 Asylum St.
Hartford, CT 06103-1516


Larry Conklin                             Lubich & Lubich                          Lynn H. Butler
1175 Prussian Way                         16375 Monterey Road, Suite N             Husch Blackwell LLP
Oceanside, CA 92057-1840                  Morgan Hill, CA 95037-5442               111 Congress Avenue, Suite 1400
                                                                                   Austin, TX 78701-4093
```

| | | |
|---|---|---|
| Manaya Management, Inc.<br>P.O. Box 2472<br>Stateline, NV 89449-2472 | Mark Astleford<br>15450 FM 1325 - Apt. # 1536<br>Austin, TX 78728-2838 | Michael Lundy<br>8101 Avella Drive<br>Austin, TX 78729-4939 |
| Moco Tax<br>3080 Bristol Street, Suite 110<br>Costa Mesa, CA 92626-3055 | PM3 Consulting, Inc.<br>3220 Feathergrass Ct., 9106<br>Austin, TX 78758-7778 | Patricia Menz<br>2207 Pasadena Dr., #9<br>Austin, TX 78757-2214 |
| Premiere Global Services<br>P.O. Box 404351<br>Atlanta, GA 30384-4351 | Secretary of State<br>State of California<br>1500 11th Street<br>Sacramento, CA 95814-5701 | Secrtary of the Treasury<br>1500 Pennsylvania Avenue, N.W.<br>Washington, DC 20220-0001 |
| Sourcive, Inc.<br>4255 Garlan Lane<br>Reno, NV 89509-5444 | (p)CALIFORNIA STATE BOARD OF EQUALIZATION<br>ACCOUNT REFERENCE GROUP MIC 29<br>P O BOX 942879<br>SACRAMENTO CA 94279-0029 | Texas Attorney General<br>Bankruptcy & Collections Division<br>P.O. Box 12548<br>Austin, TX 78711-2548 |
| (p)TEXAS COMPTROLLER OF PUBLIC ACCOUNTS<br>REVENUE ACCOUNTING DIV - BANKRUPTCY SECTION<br>PO BOX 13528<br>AUSTIN TX 78711-3528 | Texas Workforce Commission<br>Tax-Collections<br>101 E. 15th Street<br>Austin, TX 78778-0001 | Tristan Scott Cowperthwait<br>Pullman & Comley<br>840 Main Street<br>Bridgeport, CT 06604 |
| U.S. Attorney General<br>Department of Justice<br>950 Pennsylvania Avenue NW<br>Washington, DC 20530-0009 | (p)US BANK<br>PO BOX 5229<br>CINCINNATI OH 45201-5229 | U.S. Department of the Treasury<br>Attn: Bankruptcy Dept.<br>Ogden, UT 84201-0001 |
| Unified Services<br>2635 W. 45th<br>Austin, TX 78731-5941 | United States Trustee - AU12<br>United States Trustee<br>903 San Jacinto Blvd, Suite 230<br>Austin, TX 78701-2450 | Verizon<br>Attn: Bankruptcy Div<br>P.O. Box 920041<br>Dallas, TX 75392-0041 |
| Verizon Wireless<br>Attn: Bankruptcy Div.<br>P.o. Box 660108<br>Dallas, TX 75266-0108 | Wells Fargo Business Card<br>P.O. Box 54349<br>Los Angeles, CA 90054-0349 | Williamson County Tax Assessor<br>904 South Main<br>Georgetown, TX 78626-5829 |

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

| | | |
|---|---|---|
| Department of Treasury<br>Attn: Bankruptcy Div.<br>P.O. Box 105083<br>Atlanta, GA 30348 | (d)Internal Revenue Service<br>Attn: Bankruptcy Division<br>P.O. Box 105078<br>Atlanta, GA 30348 | (d)Internal Revenue Service<br>Attn: Bankruptcy Division<br>P.O. Box 105083<br>Atlanta, GA 30348 |

| | | |
|---|---|---|
| State Board of Equalization<br>State of California<br>Account & Analysis & Control Section<br>P.O. Box 942879<br>Sacramento, CA 94279 | Texas Comptroller<br>c/o Susan Combs<br>P.O. Box 13528<br>Austin, TX 78711-3528 | U.S. Bank<br>P.O. Box 790408<br>Saint Louis, MO 63179 |

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (d)Brian J. Sol.<br>P.O. Box 2472<br>Stateline, NV 89449-2472 | (d)Internal Revenue Service<br>PO BOX 7346<br>Philadelphia, PA 19101-7346 | (d)Lynn H. Butler<br>Husch Blackwell LLP<br>111 Congress Avenue, Suite 1400<br>Austin, TX 78701-4093 |

End of Label Matrix
Mailable recipients    53
Bypassed recipients     3
Total                  56